**\*\* E-filed April 27, 2011 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAYLEY HICKCOX-HUFFMAN, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br>v.<br><br>US AIRWAYS, INC., et al.,<br><br>  Defendants. | No. C10-05193 HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[Re: Docket No. 23]** |

**BACKGROUND**

Hayley Hickcox-Huffman ("Plaintiff") alleges that she purchased a one-way airline ticket from U.S. Airways Group, Inc. ("USAGI") and U.S. Airways, Inc. ("USAI") (collectively, "Defendant"[1]) on May 2, 2009 to travel from Colorado Springs, Colorado to San Luis Obispo, California on an unspecified date. Docket No. 21 ("First Amended Complaint" or "FAC") ¶ 14. While at an airport in Colorado Springs on that unspecified date, she checked one bag with Defendant's agent and paid a $15 baggage fee.[2] Id. Plaintiff boarded her flight and flew to San Luis Obispo. Id. ¶ 15. When she arrived, her bag was not there. Id. She notified Defendant of this and

---

[1] Plaintiff alleges that USAI is an "operating unit" of USAGI. FAC ¶ 7. USAGI and USAI are referred to collectively as "Defendant" throughout the First Amended Complaint, and, for purposes of continuity, the Court will continue using that nomenclature here.

[2] Plaintiff alleges that on July 9, 2008 Defendant began charging passengers for checking all bags. FAC ¶ 11. Initially, passengers were charged between $15 to $115 for their first checked bag, $25 to $125 for their second checked bag, and $100 to $200 for their third through ninth checked bags. Id. Defendant raised the charges in July 2009 and again in January 2011. Id.

filed a report. Id. Defendant was unable to locate her bag until the following day. Id. Defendant did not return the $15 baggage fee that Plaintiff paid. Id. ¶ 16.

Plaintiff subsequently filed this putative class action against Defendant.³ See FAC. The gravamen of Plaintiff's action is set forth in Paragraph 12 of the First Amended Complaint:

> When Defendant charged these fees for baggage, it incurred the obligation to handle such baggage with care and ensure the timely delivery of the baggage to its passengers upon their arrival at their destination. Each time Defendant delays or loses baggage, but fails to return the baggage fee to the affected passenger, it breaches this obligation. Defendant is not entitled to retain baggage fees collected from passengers whose bags have been delayed or lost while in the care of Defendant.

FAC ¶ 12. Accordingly, Plaintiff has brought the following eight claims against Defendant: (1) breach of a "self-imposed undertaking" that allegedly is evidenced by its words and actions, namely, its Customer Commitment that is found within its Terms of Transportation and its taking of a fee in exchange for transporting Plaintiff's baggage; (2) breach of an express contract, namely, its Terms of Transportation; (3) breach of an implied contract; (4) breach of contract under federal common law; (5) breach of the covenant of good faith and fair dealing; (6) unjust enrichment; (7) intentional misrepresentation; and (8) negligent misrepresentation. Id. ¶¶ 29-74.

Defendant moved to dismiss Plaintiff's First Amended Complaint on the grounds that her claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 40120, et seq. ("ADA"), and that she otherwise failed to allege facts sufficient to state her claims. Docket No. 23 ("MTD"). Plaintiff opposed Defendant's motion. Docket No. 24 ("Opp'n"). Oral argument was heard on April 19, 2011.⁴

---

³ Plaintiff purports to represent herself, a class defined as "[a]ll US Airways passengers traveling domestic flights who were charged and paid a baggage fee or fees, and whose bags were delayed or lost, and who upon notifying Defendant of the delay or loss did not receive a refund of their baggage fee(s) from US Airways," and a subclass defined as "[a]ll US Airways passengers traveling domestic flights who were subject to the Terms of Transportation in effect for Plaintiff Huffman and who were charged and paid a baggage fee or fees, and whose bags were delayed or lost, and who upon notifying Defendant or the delay or loss did not receive a refund of their baggage fee(s) from US Airways." FAC ¶ 17. Plaintiff does not specify a class period. See FAC.

⁴ Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

2

## DISCUSSION

"In 1978, Congress 'determin[ed] that maximum reliance on competitive market forces' would favor lower airline fares and better airline service, and it enacted the [ADA]." Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 367-68 (2008) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992) (internal quotation marks omitted); see also 49 U.S.C. App. § 1302(a)(4) (1988 ed.); 92 Stat. 1705. "In order to 'ensure that the States would not undo federal deregulation with regulation of their own,' that Act 'included a pre-emption provision' that said 'no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier.'"[5] Id. at 368 (quoting Morales at 378; 49 U.S.C. App. § 1305(a)(1) (1988 ed.)).

There is an unresolved split among the Courts of Appeal with respect to what constitutes "service" for purposes of ADA preemption. See Northwest Airlines, Inc. v. Duncan, 531 U.S 1058 (2000) (O'Connor, J., dissenting). As Justice O'Connor explained in her dissent to the Supreme Court's decision to deny a petition for writ of certiorari on this issue:

> The Ninth Circuit below, adhering to its decision in Charas v. TWA, 160 F.3d 1259 ([9th Cir.] 1998) (en banc), held that the term "service" encompasses "'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail'" but not the "'provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.'" Duncan v. Northwest Airlines, Inc., 208 F.3d 1112, 1114-15 ([9th Cir.] 2000) (quoting Charas, supra, at 1261). The Third Circuit has expressly agreed with this approach. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 194 ([3d Cir.] 1998). In contrast, three Courts of Appeal have adopted a much broader definition. See Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc) (defining "service" in terms of the "'[contractual] features of air transportation,'" including "'ticketing, boarding procedures, provision of food and drink, and baggage handling'"); Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998) ("Undoubtedly, boarding procedures are a service rendered by an airline") (citing Hodges, supra, at 336); Travel All Over The World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996) (adopting Hodges definition).

Id.

Based on the Ninth Circuit's definition of "services" as "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail" but not the "provision

---

[5] Reenacting Title 49 of the United States Code in 1994, Congress revised this clause to read: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). Congress intended the revision to make no substantive change. Pub. L. 103-272, § 1(a), 108 Stat. 745.

3

of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities," Charas, 160 F.3d at 1261, Defendant argues that Plaintiff's claims are preempted by the ADA because they "relate to" its "services" of transporting "cargo." MTD at 8-10. Plaintiff, in turn, argues that the checked baggage at issue here is not "cargo," but is "luggage" that is outside of the Ninth Circuit's definition. Opp'n at 10-13.

To decide who is right, it is critical to read the Charas definition in light of the context of that case. Charas involved several consolidated "run-of-the-mill" personal injury cases. See Charas, 160 F.3d at 1261-62 (one plaintiff brought a negligence claim after she tripped over a piece of luggage allegedly left in the aisle of the airplane by a flight attendant; another plaintiff sued after being hit in the head by a piece of luggage that fell out of the airplane's overhead storage bin; etc.). Looking to relevant Supreme Court cases, the Ninth Circuit reasoned that those type of state law tort claims did not "relate to" airline services.[6] Id. at 1264 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219, 230-33 (1995); Morales, 504 U.S. at 390). Indeed, it quoted Justice O'Conner's concurring opinion in Wolens, which stated that:

> Many cases decided since Morales have allowed personal injury claims to proceed, even though none has said that a State is not "enforcing" its "law" when it imposes tort liability on an airline. In those cases, courts have found the particular tort claims at issue not to "relate" to airline "services," much as we suggested in Morales that state laws against gambling and prostitution would be too tenuously related to airline services to be preempted.

Id. (quoting Wolens at 242 (O'Connor, J., concurring in part and dissenting in part)).

Such reasoning makes sense in light of the big picture. In Charas, the Ninth Circuit made clear that "[u]nderstanding the objective of [the ADA] is critical to interpreting the extent of its preemption." Id. at 1265. As the objective was to deregulate the airline industry and promote maximum reliance on competitive market forces, the Ninth Circuit determined that "[n]othing in the Act itself, or its legislative history, indicates that Congress had a 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.'" Id. (citing Morales, 504 U.S. at 390). In other words, "[n]owhere in the legislative history, or in

---

[6] The Supreme Court defined "related to" as "having a connection with or reference to" airline prices, routes or services. Morales, 504 U.S. at 2037.

4

what remains of the federal airline regulatory statutes, does Congress intimate that 'service,' in the context of deregulation, includes the dispensing of food and drinks, flight attendance assistance, or the like." Id. at 1266. Accordingly, the Ninth Circuit concluded that:

> [W]hen Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct. Like "rates" and "routes," Congress used "service" in § 1305(a)(1) in the public utility sense — i.e., the provision of air transportation to and from various markets at various times. In that context, "service" does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions.

Id. (emphasis in original).

Plaintiff attempts to distinguish "baggage" from "cargo" in this context by citing a Department of Transportation PowerPoint presentation, Defendant's website, "common sense," and a dictionary for the point that these terms are not synonymous. But these sources do not offer much help. In defining "service" as it did, the Ninth Circuit made clear that a court should not attempt to distinguish "between 'operations and maintenance' and 'service'" (as it had attempted to do with little success prior to Charas), "and suggested instead that [a] court examine whether the state laws underlying the claims frustrate the goal of economic deregulation by interfering with the forces of competition."[7] Id. at 1263 (explaining and adopting the approach taken by Judge O'Scannlain).

Using this approach, this Court believes that Plaintiff's state law claims would do just that. It is obvious that baggage fees are just one of many fronts on which airlines are doing competitive battle. Indeed, the baggage fees imposed (or not imposed) by each airline has become an important consideration for consumers.[8] In addition, her claims involve Defendant's prices for its service, as

---

[7] Plaintiff urges the Court to distinguish between "paying an airline to have good shipped . . . and being able to have services associated with passenger travel" because "[w]ithout that distinction, once merely passenger-travel-related services are encompassed within the term 'service,' there is no wall to prevent a slide down the [proverbial] slippery slope into a definitional maw that would swallow nearly everything an airline does in the name of 'service.'" Opp'n at 12 (citing Charas, 160 F.3d at 1266). But as explained above in the text, approaching the problem in this manner would entail doing exactly what the Ninth Circuit cautioned courts not to do. See Charas, 160 F.3d at 1263.

[8] See, e.g., Southwest Airlines, Why Fly Southwest?, Bags Fly Free, http://www.southwest.com/html/cs/landing/bags_flyfree.html (last visited Apr. 18, 2011) ("Did you know that Southwest Airlines does not charge for your first or second checked bag? That's right! While bag fees have become the norm amongst our competitors, we've stayed true to our reputation as the maverick of the airline industry by not charging for bags. Your skis and golf bags fly free

5

she wants Defendant to refund the baggage fees it collected in relation to bags it failed to timely deliver. In her First Amended Complaint, she estimates that the number of such fees would be well over $100,000. FAC ¶ 20. In these circumstances, Plaintiff's claims would impermissibly "frustrate the goal of economic deregulation by interfering with the forces of competition." See Charas, 160 F.3d at 1263; see also Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1197-98 (9th Cir. 1999) ("[S]tate law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the ADA" because "[t]he scope and standard of limited liability of an air carrier for loss or damage to cargo are directly related to the carrier's rates and services, and go to the very heart of the ADA."); Varga v. United Airlines, No. C09-02278 SI, 2009 WL 2246208, at *6 (N.D. Cal. July 24, 2009) ("Plaintiff seeks to hold defendant airline liable for the loss of items from her luggage. The Court agrees with defendant that this is precisely the type of state law claim the Ninth Circuit found to be preempted by federal statute in Read-Rite.").

Relying on Wolens, Plaintiff also argues that her breach of contract claims are not preempted because they stem from a "self-imposed undertaking" on the part of Defendant. Opp'n at 8-10. In that case, the Supreme Court held that the plaintiff's claims for breach of contract, which were based on an airline's retroactive changes to the terms and conditions of its frequent flyer program, were not preempted by the ADA because "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." Wolens, 513 U.S. at 222. It explained:

> We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§] 1305(a)(1). . . ." A remedy confined to a contract's terms simply holds parties to their agreements — in this instance, to business judgments an airline made public about its rates and services.

---

too!"); see also George Mannes, Checked-baggage fees win most-hated competition, MORE MONEY, (June 30, 2010, 4:18 p.m.), http://moremoney.blogs.money.cnn.com/2010/06/30/checked-baggage-fees-win-most-hated-competition/ (describing an informal poll that indicated that checked baggage fees were "the most hated fees in America").

6

Id. at 228-29 (footnote and internal citations omitted). For this reason, "routine" contract claims, like "run-of-the-mill" personal injury claims, are not preempted by the ADA. Id. at 232.

Here, though, Defendant had no contractual obligation to provide Plaintiff with a refund when her luggage was temporarily misplaced. Plaintiff argues that the following bulletpoints found within Defendant's Customer Commitment — located at Section 2.9 of Defendant's then-operative Terms of Transportation — required Defendant to have refunded her baggage fee:

> **2.9  Our Customer Commitment**
>
> US Airways has voluntarily established a program setting standards for service levels in the areas of fares, flight information, baggage, ticket purchase and refund, customers with special needs, onboard delays, oversales, the Dividend Miles program, our codeshare partners, and complaint resolution. These commitments are incorporated into the applicable sections within this document.
>
> US Airways has committed to . . .
>
> - Provide on-time baggage delivery . . .
> - Make prompt refunds . . . [and]
> - Require the same quality of service by US Airways Express partners."

Opp'n at 2-3 (citing Docket No. 13-4 ("Rice Decl."), Ex. A ("Terms of Transportation" or "TOT")).

These individual bulletpoints do not evidence a "self-imposed undertaking" on the part of Defendant to refund Plaintiff's baggage fee. In its reply brief, Defendant correctly points to several reasons why this is so. Docket No. 26 ("Reply") at 6-10. First, none of these bulletpoints specifically state that Defendant would refund baggage fees if a passenger's baggage reaches its destination after the passenger does. TOT at § 2.9. Second, Plaintiff's interpretation of these bulletpoints is belied by the rest of the Terms of Transportation. For example, Section 8 of the Terms of Transportation is devoted entirely to refunds, but, despite describing refunds that are available in a number of specific instances, does not mention refunds for late-arriving baggage at all. Id. at § 8.0. In addition, Section 11 of the Terms of Transportation is devoted entirely to baggage, and it states that "if US Airways fails to return checked baggage upon arrival at the destination, every effort will be made to return the checked baggage within 24-hours of the customer's arrival at the destination airport." Id. at § 11.6. Section 11 also allows for "provable direct or consequential damages resulting from the loss, delay or damage to baggage," and that "all claims are subject to

proof of value and loss." Id. "Thus," Defendant explains, "while Section 11 of the TOT recognizes that there may be times when passenger and baggage will not arrive at the same time, it does not provide for a refund in such circumstances. To the contrary, it states that US Airways will make its best efforts to deliver the bag within 24-hours, and allows for a recovery only when there are provable, consequential damages." Reply at 9.

For these reasons, Plaintiff's claims are preempted by the ADA.[9] Plaintiff's checked baggage is analogous to "cargo" in light of the reasoning and context of Charas, and Plaintiff's claims do not fall under the Wolens exception for normal breach of contract claims.[10]

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is GRANTED. Plaintiff's claims are dismissed with prejudice because they are preempted by the ADA. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: April 27, 2011



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[9] Because the Court concludes that Plaintiff's claims are preempted by the ADA, it does not reach Defendant's argument that Plaintiff's claims were insufficiently pled.

[10] Defendant believes that two recent decisions from courts in the Western District of Washington also support their argument that the Wolens exception does not apply. See MTD at 9-10 (citing Covarrubias v. American Airlines, Inc., No. C10-01158 JLR (W.D. Wash. Dec. 7, 2010)); Docket No. 28 (attaching Schultz v. United Airlines, Inc., No. C10-01263 RSM (W.D. Wash. Apr. 1, 2011)). In those cases, which feature near identical issues as those present here, the courts dismissed the plaintiffs' complaints with leave to amend because the plaintiffs did not allege enough facts for the courts to determine whether the defendant airlines had created "self-imposed undertakings" to refund baggage fees. In this case, however, Plaintiff's complaint contains many more allegations in this regard than did the dismissed complaints, and Plaintiffs stated during oral argument that they had done so in light of these two other cases. In any case, based on the facts alleged in Plaintiff's First Amended Complaint, the Court concludes that the Wolens exception does not apply.

**C10-05193 HRL Notice will be electronically mailed to:**

| Name | Email |
|---|---|
| Jessica Brooke Hardy | jehardy@omm.com, etorres@omm.com |
| Justin Potter Karczag | jkarczag@foleybezek.com |
| Michael Gerard McGuinness | mmcguinness@omm.com, ldauz@omm.com |
| Robert Alan Siegel | rsiegel@omm.com |
| Roger N. Behle, Jr | rbehle@foleybezek.com, jloeser@foleybezek.com, mpoulos@foleybezek.com |
| Thomas G. Foley, Jr | tfoley@foleybezek.com, cconnors@foleybezek.com, jkarczag@foleybezek.com |
| William Michael Aron | aron@aronlawyers.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

United States District Court
For the Northern District of California