**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| HAYLEY HICKCOX-HUFFMAN, on behalf of herself and all others similarly situated, *Plaintiff-Appellant*,<br><br>v.<br><br>US AIRWAYS, INC.; U.S. AIRWAYS GROUP, INC., *Defendants-Appellees.* | No. 11-16305<br><br>D.C. No. 5:10-cv-05193-HRL<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Howard R. Lloyd, Magistrate Judge, Presiding

Argued and Submitted November 8, 2012
Submission Withdrawn June 6, 2013
Resubmitted April 24, 2017[1]
San Francisco, California

Filed May 3, 2017

---

[1] After oral argument, we vacated submission pending the Supreme Court's resolution of *Northwest, Inc., v. Ginsberg*, 134 S. Ct. 1422 (2014). Upon resolution of that case, we ordered supplemental briefing. We subsequently awaited *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016).

Before: Andrew J. Kleinfeld and Marsha S. Berzon, Circuit Judges, and Roger T. Benitez, District Judge.*

Opinion by Judge Kleinfeld

## SUMMARY**


### Airline Deregulation Act / Preemption

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal, based on preemption by the Airline Deregulation Act, of a putative class action which alleged claims against US Airways for refunds passengers paid as baggage fees.

The plaintiff passenger pleaded breach of contract, alleging that US Airways promised her timely delivery of her checked bag upon arrival in exchange for a $15 fee, and the passenger did not get her bag until the day after arrival.

The panel held that plaintiff sufficiently alleged that the airline promised under the terms of transportation to deliver her bag when she landed. The panel held that because plaintiff's claim was for breach of contract of a voluntarily assumed contractual undertaking, and she pleaded breach of contract, the claim was not preempted by the Airline


* The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Deregulation Act as construed by *American Airlines v. Wolens*, 513 U.S. 219 (1995). The panel remanded for further proceedings.

---

## COUNSEL

Justin P. Karczag (argued), Roger N. Behle, and Thomas Foley, Foley Bezek Behle & Curtis LLP, Santa Barbara, California; William M. Aron, Law Office of William M. Aron, Santa Barbara, California; for Plaintiff-Appellant.

Michael G. McGuinness (argued), Robert A. Siegel, and Jillian R. Weinstein, O'Melveny & Myers LLP, Los Angeles, California, for Defendants-Appellees.

Jeffrey A. Lamken and Michael G. Pattillo, Jr., MoloLamken LLP, Washington, D.C.; Andrew M. Bernie, MoloLamken LLP, New York, New York; for Amicus Curiae Air Transport Association of America, Inc.

---

## OPINION

KLEINFELD, Senior Circuit Judge:

We decide whether the Airline Deregulation Act preempts state law claims arising out of delayed baggage.

### Facts.

The district court dismissed this case at the pleading stage under Rule 12(b)(6) for failure to state a claim, so we treat the facts as pleaded in the complaint and attached exhibits as true for the purposes of this appeal.[2]

According to the first amended complaint, Hayley Hickcox-Huffman bought a ticket on US Airways to fly from Colorado Springs, Colorado, to San Luis Obispo, California. She checked one bag. Airlines have different policies on charging for baggage, and the same airline may change its policy from time to time. Some charge nothing for checking one bag, some charge fees in varying amounts. US Airways charged Hickcox-Huffman $15 to check her bag. Her bag did not show up on the baggage carousel, and US Airways delivered it to her the next day.

Hickcox-Huffman filed a putative class action to get her $15 back.[3] Her complaint pleads (1) "breach of self-imposed

---

[2] *See Bodine v. Graco, Inc.*, 533 F.3d 1145, 1148 (9th Cir. 2008).

[3] The class she seeks to represent is "[a]ll US Airways passengers traveling domestic flights who were charged and paid a baggage fee or fees, and whose bags were delayed or lost, and who upon notifying

undertaking," (2) "breach of express contract," (3) "breach of implied contract," (4) "breach of contract — federal common law," (5) "breach of the covenant of good faith and fair dealing," (6) "unjust enrichment," (7) "intentional misrepresentation," and (8) "negligent misrepresentation." All the claims are for refunds of what she and other passengers paid as baggage fees, on the theory that US Airways did not do what it promised to do in exchange for the money.

To show the terms of the agreement, Hickcox-Huffman attached US Airways' "Terms of Transportation" to the complaint. The terms say that "Travel on US Airways shall be deemed acceptance by the customer of US Airways' terms of transportation." In boldface, they explain that "**US AIRWAYS SHALL IN NO EVENT BE LIABLE FOR ANY INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES**" but makes an exception for baggage: "**EXCEPT BAGGAGE LIABILITY, SECTION 11**." The publication also says that "US Airways has voluntarily established a program setting standards for service levels" regarding baggage, and has "committed to . . . [p]rovide on-time baggage delivery" and "[m]ake prompt refunds."

Section 11 addresses baggage, and subsection 11.6 addresses "baggage claim limits and procedures." That subsection limits liability for "loss, delay, or damage" to a dollar ceiling, and requires written notice of a claim for any "delay of checked baggage" within 45 days of the incident for domestic travel. And it says that if the checked baggage is

---

Defendant of the delay or loss did not receive a refund of their baggage fee(s) from US Airways."

not returned to the customer "upon arrival," then the airlines will make "every effort" to return it within 24 hours.

The district court dismissed the complaint on the grounds that Hickcox-Huffman's claims were preempted by the Airline Deregulation Act.[4] The court reasoned that Hickcox-Huffman's claims related to an airline "service," a preempted category under the Act, and that the contract language was not specific enough to avoid preemption.

**Analysis.**

We review the district court's ruling on preemption de novo.[5]

Airlines used to operate like a public utility, with their rates and terms of service set by the federal government's Civil Aeronautics Board ("CAB"). State governments also imposed requirements, such as particular routes. Service was lavish, and fares were much higher than they are now (corrected for inflation).[6]

Congress deregulated the industry and abolished the CAB in 1978. The Airline Deregulation Act sought to promote "maximum reliance on competitive market forces . . . to

---

[4] 49 U.S.C. § 1301 *et seq.*

[5] *Inland Empire Chapter of Associated Gen. Contractors of Am. v. Dear*, 77 F.3d 296, 299 (9th Cir. 1996).

[6] It is claimed that in the years after deregulation, passengers saved approximately $19.4 billion per year in lower fares. *See* Robert W. Poole Jr. & Viggo Butler, *Airline Deregulation: The Unfinished Revolution*, Regulation, Spring 1999, at 44.

provide the needed air transportation system . . . [and] to encourage efficient and well-managed air carriers."[7] The Act said that it was intended "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services."[8]

To prevent the states from undermining this new free market approach, Congress prohibited them from enacting or enforcing any law "related to a price, route, or service of an air carrier."[9] But Congress expressly did not abolish remedies other than those provided in the Airline Deregulation Act. To the contrary, the Act specifies that remedies it provides are "in addition to any other remedies provided by law."[10] This savings clause language used to say more—that nothing in the chapter shall "abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."[11] While that change might give rise to an inference that the savings clause was narrowed, "[t]hose additional terms were deleted as part of a wholesale recodification of Title 49 in 1994, [and] Congress made it clear that this recodification did

---

[7] 49 U.S.C. § 40101(a)(6).

[8] Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (1978).

[9] 49 U.S.C. § 41713(b)(1).

[10] *Id.* § 40120(c).

[11] 49 U.S.C. app. § 1506 (1988) (amended at 49 U.S.C. § 4120(c)). The original savings clause was from the Federal Aviation Act, Pub. L. No. 85-726, § 1106, 72 Stat. 798 (1958).

not effect any 'substantive change.'"[12] The tension between the preemption clause and the savings clause has generated a series of decisions addressing where the boundary lies between preempted claims and preserved claims.

The Supreme Court read the preemption clause broadly in *Morales v. Trans World Airlines, Inc.*, reading its words "related to" in the same fairly broad sense as the same phrase in ERISA.[13] An association of state attorneys general had adopted its own enforcement guidelines for policing airline advertisements to protect consumers from deception and nondisclosure.[14] The Court held that injunctive and declaratory relief were available to the airlines against the state attorneys general.[15] Even though the attorneys general did not propose to tell the airlines whom they must serve for how much and in what way, restrictions on advertising of fares and services would "relate to" fares, such as by making

[12] *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) (quoting Revision of Title 49 United States Code Annotated "Transportation," Pub. L. No. 103-272, § 1(a), 108 Stat. 745 (1994)).

[13] 504 U.S. 374, 383–84 (1992). The Court has since *Morales* clarified its interpretation of the ERISA "related to" language, "recogniz[ing] that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

[14] *Morales*, 504 U.S. at 379.

[15] *Id.* at 389–90.

it harder for consumers to discover which airline charged the lowest fare.[16]

The Court limited the potential breadth of *Morales* in *American Airlines, Inc. v. Wolens*.[17] Passengers claimed breach of contract and violation of an Illinois consumer fraud act because American Airlines had cut back on mileage credits in its frequent flyer program.[18] The Court held that the consumer fraud act claim was preempted, but not the breach of contract claim.[19] Explaining the distinction, the Court said the state consumer fraud act "does not simply give effect to bargains offered by the airlines and accepted by airline customers," but also "serves as a means to guide and police the marketing practices of the airlines."[20] Based on that latter function, enforcement of the state law in *Wolens* was preempted by the Airline Deregulation Act's of "leav[ing] largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms."[21] But common law breach of contract claims, despite being based on state law, were not preempted, because they are voluntarily assumed obligations, not state impositions:

---

[16] *Id.*

[17] 513 U.S. 219 (1995).

[18] *Id.* at 224–25.

[19] *Id.* at 228–33.

[20] *Id.* at 228.

[21] *Id.*

> [T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's "enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law" within the meaning of [the Airline Deregulation Act]. . . . A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services. The [Airline Deregulation Act], as we recognized in *Morales*, was designed to promote "maximum reliance on competitive market forces." Market efficiency requires effective means to enforce private agreements.[22]

In this way, *Wolens* reconciled the savings clause (which must save something) with the preemption clause. The States may not impose their own rules regarding fares, routes, or services, but may afford relief for breaches of obligations the airlines voluntarily undertook themselves, even when the obligations directly relate to fares, routes, and services.[23] Justices O'Connor and Thomas would have treated the contract claims as preempted under a broad reading in *Morales* of "relates to,"[24] and Justice Stevens would have

[22] *Id.* at 228–30 (footnotes and citations omitted).

[23] *Id.* at 232–33.

[24] *Id.* at 238–45 (O'Connor, J., concurring in the judgment in part and dissenting in part).

excepted the consumer fraud act claim as well from preemption.[25] The majority retained *Morales* but expressed the common law view of precedent, that "principles seldom can be settled 'on the basis of one or two cases, but require a closer working out.'"[26]

*Wolens* controls as to Hickcox-Huffman's breach of contract claim. If she adequately pleaded breach of contract, then her claim is not preempted. The Supreme Court's subsequent *Northwest, Inc. v. Ginsberg*[27] decision did not change the *Wolens* rule that state law breach of contract claims are not preempted. The distinction that *Ginsberg* made was between voluntarily assumed contractual obligations and obligations imposed on contracting parties by state law.[28] The Court characterized the central issue in the case as "whether respondent's implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook."[29] Some states used the "covenant of good faith and fair dealing" doctrine to effectuate the parties' intentions and reasonable expectations, but others used it to ensure that a party did not violate community standards regardless of what the parties agreed

---

[25] *Id.* at 235–37 (Stevens, J., concurring in part and dissenting in part).

[26] *Id.* at 234–35 (quoting Pound, *Survey of the Conference Problems*, 14 U. Cin. L. Rev. 324, 339 (1940)).

[27] 134 S. Ct. 1422 (2014).

[28] *Id.* at 1430–33.

[29] *Id.* at 1431.

to.[30] Since the covenant at issue in that case was of the latter sort, imposing a state obligation that could not be avoided by contract, it was preempted.[31] The Court went out of its way to note that "respondent's claim of ill treatment by Northwest might have been vindicated if he had pursued his breach-of-contract claim after its dismissal by the District Court," but he had not appealed that dismissal.[32]

Thus, even after *Ginsberg*, if Hickcox-Huffman has adequately pleaded breach of a contract provision that US Airways voluntarily entered into, her claim is not preempted. The essential elements of a breach of contract claim are the existence of an enforceable contract, the defendant's breach, and damages to the plaintiff caused by the breach.[33] Hickcox-Huffman pleaded the terms stated by US Airways in its terms of transportation, supported her averment that she checked one bag, and paid US Airways' $15 charge with documentary evidence, and additionally alleged that the bag was not delivered to her until the day after her arrival. She requested restitution damages of $15 that she paid for timely delivery of

---

[30] *Id.* at 1431–32.

[31] *Id.*

[32] *Id.* at 1432–33.

[33] *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004); *see also Reichert v. Gen. Ins. Co. of Am.*, 69 Cal. Rptr. 321, 325 (1968) (in bank) (adding a fourth element, the plaintiff's performance or excuse for nonperformance under the contract). The terms of transportation say that Virginia law governs but plaintiff argues that California law governs this contract. The relevant aspects of California and Virginia contract law are so substantially similar, that we need not decide which state's contract law governs.

her checked bag.[34] We look to the terms of transportation to see whether it may be read as a contract to deliver the bag when she landed, rather than the next day.

Hickcox-Huffman pleaded breach of contract with three verbal formulas, but all amount to the same thing, that the airline made an enforceable promise to her that it did not keep. Her first formulation, "breach of self-imposed undertaking," appears to be an allusion to the *Wolens* language excluding self-imposed undertakings from preemption, the second, "breach of express contract" says basically the same thing, as does the third, "breach of implied contract."

US Airways terms of transportation are a routine offer of a unilateral contract subject to being accepted by flying on US Airways. The airline has contracted to carry the passenger's baggage at a rate of $15 for the first bag and $25 for the second. The theory of her claim, as variously stated, is that US Airways promised her timely delivery, that is, delivery of her bag upon arrival, in exchange for $15. US Airways does not dispute that she flew on their airline, paid the $15, and did not get her bag until the day after her arrival. It also does not dispute that its terms of transportation govern.

US Airways uses the word "timely" to mean upon arrival. It expressly commits itself to "on-time baggage delivery." In its subsection addressing baggage claims for "loss, damage,

[34] Hickcox-Huffman, on behalf of the putative class, also requested that US Airways be enjoined from retaining baggage service fees when bags are lost or delivered late.

or *delay*,"[35] it refers the passenger to its policy on "delayed" baggage. And it commits itself to applying this "delayed baggage" policy if it "fails to return checked baggage *upon arrival* at the destination."[36] These terms establish that US Airways treats timeliness of baggage delivery as delivery when the passenger arrives at the destination, and treats delivery after that time as delivery of "delayed" baggage. Thus, under the terms of transportation, she properly pleaded breach of the promise that delivery of her bag would be "timely."

As for the $15, US Airways' terms say that the airline "will assess a $15.00 fee for the first checked bag and a $25.00 fee for the second checked bag" as "baggage fees." Putting these terms together, the $15 Hickcox-Huffman paid was consideration for delivery upon her arrival at her destination of her checked bag.

The terms of transportation say that if the airline "fails to return baggage upon arrival at the destination, every effort will be made to return the baggage within 24 hours." The "every effort" phrase means that the airline does not promise to return "delayed" baggage within 24 hours, just to make "every effort" to do so. That might have a bearing on a case where the airline took more than 24 hours to return a delayed bag, causing increased consequential damages (e.g., buying one new shirt might cover a 24 hour delay, but two new shirts might be needed for a 48 hour delay). Hickcox-Huffman alleged her bag was returned "the following day," without stating that the delivery occurred more than 24 hours after her

---

[35] (Emphasis added).

[36] (Emphasis added).

arrival, so the "every effort" language does not bear on her case. What matters at this stage of her case is whether she has sufficiently alleged that the airline promised under the terms of transportation to deliver her bag when she landed.

She has. In its terms of transportation, the airline says "US Airways has committed to . . . [p]rovide on-time baggage delivery." Unlike the "best efforts" language for finding and delivering delayed baggage, the commitment has no "every effort" or other language limiting the commitment in some way that might arguably make it a mere promise of best efforts or mere aspirations. US Airways assented to be bound to deliver checked baggage on a passenger's arrival. It is hard to see what "committed" might mean other than a promise, a contractual obligation.

The terms of transportation use the contract term of art "acceptance," and say that "[t]ravel on US Airways shall be deemed acceptance by the customer of US Airways' terms of transportation." If the terms of transportation were merely aspirational, it would make no sense to "deem" travel as "acceptance." The terms of transportation are worded as an offer of a contract that can be accepted by traveling on the airline.[37] Hickcox-Huffman avers that she paid her fare, paid the $15 baggage fee, and flew on US Airways, so she accepted US Airways' offer. She now wants her $15 back, as restitution damages, because US Airways did not do what it promised to do and yet has kept her money. Thus she has

---

[37] *See* Restatement (Second) of Contracts § 45(1) (Am. Law Inst. 1981) ("Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders . . . .").

pleaded offer, acceptance, consideration, breach, and damages.

Because Hickcox-Huffman's claim is for breach of contract of a voluntarily assumed contractual undertaking, and she pleads breach of contract, the claim is not preempted by the Airline Deregulation Act as construed by *Wolens*.[38]

US Airways raises several different arguments for why it is not obligated to refund Hickcox-Huffman's $15 despite not having delivered her bag on time. The airline says that its contractual cap on consequential damages in the terms of transportation somehow should be read to exclude whatever damages Hickcox-Huffman may claim. The terms of transportation provide that the airline's liability for "direct or consequential damages resulting from the loss, delay or damage to baggage" is limited to $3,300 per passenger for domestic travel. The $3,330 limit is of no consequence here, because all Hickcox-Huffman claims is the $15 that she paid. US Airways argues that because the airline does not expressly promise a refund if baggage is delayed, there is no breach of contract and no obligation to refund Hickcox-Huffman. But

[38] That Hickcox-Huffman's pleadings *allege* that US Airways breached "privately ordered obligations" contained within the terms of transportation and, on her contract claims, "seek[] recovery solely for the airline's alleged breach of its own, self-imposed undertakings," *Wolens*, 513 U.S. at 228, may well be enough to hold that there was no *preemption* as to those claims. Any further consideration regarding whether those claims are viable can be seen as directed at determining whether she plausibly alleged that there was a contract and that it was breached. We have no need in this case to clarify the distinction further. Either way, the ultimate question here is whether, on the pleadings, Hickcox-Huffman stated a claim upon which relief can be granted, which we conclude she did.

a contract may be enforceable even if it does not specify a remedy for a breach. Ordinarily common law provides a range of remedies for breach, except where some remedies are contractually limited or excluded. Refunds are among the remedies traditionally recognized as among those which may be granted "as justice requires."[39] "The final interest capable of being protected following a breach of contract, the restitution interest, seeks to compensate the plaintiff for the reasonable value of any benefit it conferred on the defendant pursuant to the parties' contract."[40] Here, this remedy requires disgorging the benefit to US Airways of the $15 that it received in exchange for its promise of timely delivery. Though restitution may be sought as an equitable remedy where there is no enforceable contract, it is also an available remedy where there is an enforceable contract that has been breached by non-performance.[41]

US Airways alternatively would have us read this limitation regarding consequential damages as implying a negative pregnant so that only consequential damages may be sought. The language of the terms of transportation suggests no negative pregnant, just a limit on a specific type of damages that can become very large. As a limit on consequential damages, it appears to be just that and no more. To the extent that the clause bears on Hickcox-Huffman's claim for restitution of the $15 paid, the implication of the

---

[39] *See* Restatement (Second) of Contracts § 344 cmt. a (Am. Law Inst. 1981).

[40] *Williston on Contracts* § 64:2 (4th ed. 2010).

[41] Restatement (Second) of Contracts § 373(1); *see also id.* at § 373(1) cmt. a, illus. 1–4; Restatement (Third) of Restitution and Unjust Enrichment pt. II, ch. 4:2 (Intro. Note) (Am. Law Inst. 2011).

limit on consequential damages for "delay" of baggage implies that delayed baggage is subject to a contractual remedy.

The airline also argues that our decision in *Sanchez v. Aerovias de Mexico, S.A. de C.V.*,[42] bars recovery. US Airways would read *Sanchez* to hold that if the airline does not promise a particular remedy, then it is not bound to provide that remedy, even if it has breached the terms of transportation. That is an incorrect reading of *Sanchez*. *Sanchez* held that if the airline had made a contractual commitment to collect the disputed portion of the ticket price due only for those passengers subject to a tourism tax, then the contractual commitment would be enforceable under *Wolens*.[43] But the airline in *Sanchez*, we held, made no such commitment. It only contracted to fly the passenger for the full ticket price, including what was labeled "tax."[44] We did not hold in *Sanchez* that absence of a contract for a particular remedy prevented contract formation.

Finally, US Airways warns, "If Hickcox-Huffman were to prevail on her claims, airlines would be required to deliver checked baggage on-time or to provide that service for free." We do not see why that argument undermines the contract claim. One airline may offer "first bag free," another may offer "bag delivery within 20 minutes or we will give you a mileage award," another may charge $50 for the first bag and expressly exclude any responsibility if the bag does not arrive

---

[42] 590 F.3d 1027 (9th Cir. 2010).

[43] *Id.* at 1030–31.

[44] *Id.* at 1028.

on the carousel when the passenger lands. And another may offer timely delivery of the first bag for $15, which would mean if the bag is not timely delivered, the passenger has not gotten what she paid for and is entitled to a contract remedy, the smallest of which is probably just getting her $15 back. If promises such as the alternative possible baggage deals hypothesized are not enforced, then the competitive market forces sought by Congress cannot operate, because a passenger with any experience or knowledge will know better than to make choices based on the unenforceable competing offers.[45] Passengers would not respond to competitive and differing offers, if passengers knew that the offerors could break their promises without impunity.

Hickcox-Huffman's claim falls on the side of the distinction that *Ginsberg* and *Wolens* protect from preemption. No state law made US Airways promise timely delivery of the first bag for $15. The airline could have made any of the promises hypothesized above or none of them. Enforcing its voluntarily undertaken contractual obligation comports with the purpose of the Airline Deregulation Act, which "simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services."[46]

---

[45] After Hickcox-Huffman started this litigation, the Department of Transportation issued a set of regulations governing domestic baggage liability. *See* 14 C.F.R. §§ 254–59 (2014). We leave to another case whether those regulations would result in a different preemption conclusion regarding contract claims arising out of baggage lost after their issuance. *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016).

[46] *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 (1995).

Hickcox-Huffman's first amended complaint also included a number of alternative claims, but we need not reach any of them because we have determined that she has pleaded an express breach of contract. These alternative claims are all reformulations in the event that her breach of contract claim was deemed preempted. She has alleged a breach of the implied covenant of good faith and fair dealing, but this covenant is merely an aid to interpreting the terms of a contract.[47] She has sufficiently alleged that US Airways breached an express provision of terms of transportation and thus need not rely on this interpretive doctrine.[48] For her unjust enrichment and misrepresentation claims, she explains in her first amended complaint that she "will not seek to recover upon" these theories if she succeeds on her breach of contract claim.

Hickcox-Huffman has pleaded breach of contract. Her breach of contract claim is not preempted, and her pleading, if true, establishes a breach of contract. We therefore must reverse and vacate the dismissal of her complaint for failure to state a claim upon which relief can be granted. As for whether some genuine issue of material fact may undermine

---

[47] *See* Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981).

[48] Under Virginia law, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). The same is true in California. *See Steiner v. Thexton*, 106 Cal. Rptr.3d 252, 259 (2010) ("[T]he *implied* covenant does not trump an agreement's *express* language.").

the truth of her averments, or whether a class should be certified, these questions were not reached in district court, so we leave them for determination on remand.

**REVERSED. The judgement below is VACATED, and the case is REMANDED for further proceedings consistent with this opinion. Costs are to be taxed against the appellees.**

## United States Court of Appeals for the Ninth Circuit

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**

- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**

- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1) A. **Purpose (Panel Rehearing):**

- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

B. **Purpose (Rehearing En Banc)**

- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ▶ The proceeding involves a question of exceptional importance; or
- ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**

- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  - and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ................................................................................................................... *(Rev. 12-1-09)*

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf.*

***Note:*** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[ ] v. [ ] 9th Cir. No. [ ]

The Clerk is requested to tax the following costs against: [ ]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED (Each Column Must Be Completed) | | | | ALLOWED (To Be Completed by the Clerk) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** | | | $ | $ | | | $ | $ |
| **Opening Brief** | | | $ | $ | | | $ | $ |
| **Answering Brief** | | | $ | $ | | | $ | $ |
| **Reply Brief** | | | $ | $ | | | $ | $ |
| **Other**** | | | $ | $ | | | $ | $ |
| | | | **TOTAL:** | $ | | | **TOTAL:** | $ |

* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

** *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [ ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [ ]

("s/" plus attorney's name if submitted electronically)

Date [ ]

Name of Counsel: [ ]

Attorney for: [ ]

---

*(To Be Completed by the Clerk)*

Date [ ]

Costs are taxed in the amount of $ [ ]

Clerk of Court

By: [ ] , Deputy Clerk