Robert A. Curtis, SBN 203870
rcurtis@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, California 93101
Telephone:  (805) 962-9495
Facsimile:  (805) 962-0722

William M. Aron, SBN 234408
aron@aronlawyers.com
LAW OFFICE OF WILLIAM M. ARON
15 West Carrillo Street
Santa Barbara, California 93101
Telephone:  (805) 618-1768
Facsimile:  (805) 618-1580

Justin P. Karczag, SBN 223764
Justin@karczagandassociates.com
KARCZAG AND ASSOCIATES PC
1100 Wilshire Boulevard, Suite 3307
Los Angeles, California 90017
Telephone:  (213) 559-7395
Facsimile:  (213) 559-7396

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HAYLEY HICKCOX-HUFFMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>US AIRWAYS, INC., US AIRWAYS GROUP, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:10-cv-05193-VKD<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:   October 9, 2018<br>Time:  10:00 a.m.<br>Dept:   Courtroom 2, Fifth Floor |

# TABLE OF CONTENTS

1.   INTRODUCTION ................................................................................................... 7

2.   SUMMARY OF FACTS AND PROCEDURAL HISTORY ................................. 7

3.   SUMMARY OF SETTLEMENT TERMS ........................................................... 9

   A.   The Settlement Class ................................................................................... 9

   B.   Total Settlement Amount ........................................................................... 10

   C.   Settlement Class Member Benefits ............................................................ 10

   D.   Cy Pres for Uncashed and Undeliverable Checks ..................................... 11

4.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................... 12

   A.   The Law Favors The Settlement Of Disputed Claims ............................... 12

   B.   The Classes Warrant Certification For The Purposes Of This Settlement........................ 13

     1.   Numerosity ..................................................................................... 14

     2.   Commonality ................................................................................... 14

     3.   Typicality ........................................................................................ 15

     4.   Adequacy of Representation ........................................................... 16

     5.   Predominance .................................................................................. 16

     6.   Superiority ...................................................................................... 17

     7.   Conclusion ...................................................................................... 19

5.   PRELIMINARY APPROVAL SHOULD BE GRANTED TO THE SETTLEMENT ......... 19

   A.   The Strength of Plaintiff's Case, the Comp1exity, Expense and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Throughout the Trial ................... 20

   B.   The Amount Offered in Settlement .......................................................... 21

   C.   The Extent of Discovery Completed and the Stage of the Proceedings ........................... 22

   D.   The Experience and Views of Counsel ..................................................... 22

   E.   There Are No Red Flags Raised By The Settlement ................................. 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.    SUMMARY OF NOTICE PLAN .................................................................... 24

7.    SCHEDULE FOR FINAL APPROVAL HEARING ............................................ 26

8.    CONCLUSION ............................................................................................. 27

# TABLE OF AUTHORITIES

### Federal Cases

*Amchem Prods. Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................... 13, 19

*Carson v. American Brands, Inc.,*
   450 U.S. 79 (1981) ..................................................................................................... 12

*Cavin v. Home Loan Ctr. Inc.,*
   236 F.R.D. 387, 396 (N.D. Ill. 2006) ...................................................................... 18

*Chavez v. Blue Sky Natural Beverage Co.,*
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................. 15

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ....................................................................... 12, 19, 20

*Deposit Guaranty Nat. Bank v. Roper*
   445 U.S. 326 (1980) ................................................................................................. 18

*duPont Glore Forgan, Inc. v. American Telephone and Telegraph Co.*
   69 F.R.D. 481 (S.D.N.Y. 1975) ............................................................................... 18

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ................................................................................................. 13

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*
   630 F. Supp. 482 (E.D. Pa. 1985) ........................................................................... 23

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) ................................................................................................. 13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 13, 14, 17

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ................................................................................... 15

*In re Corrugated Container Antitrust Litig.*
   643 F.2d 195 (5th Cir. 1981) ................................................................................... 19

*In re Mego Financial Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ................................................................................... 22

*In re Phenylpropanolamine Prods. Liab. Litig.*
   227 F.R.D. 553 (W.D. Wash. 2004) ........................................................................ 16

*In re Warfarin Sodium Antitrust Litigation*
   391 F.3d 516 (3rd Cir. 2004) ................................................................................... 21

*Jordan v. Los Angeles County*,
    669 F.2d 1311 (9th Cir. 1980) ................................................................. 14

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ................................................................... 16

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 22

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*
    671 F. Supp. 819 (D. Mass. 1987) ......................................................... 20

*Mace v. Van Ru Credit Corp.*
    109 F.3d 228 (7th Cir. 1997) ................................................................... 19

*Montgomery v. Rumsfeld*,
    572 F.2d 250 (9th Cir. 1978) ................................................................... 13

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) ................................................................................ 26

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................... 19

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ............................................................ 15

*Siegel v. Chicken Delight, Inc.*
    271 F. Supp. 722 (N.D. Cal. 1967) ......................................................... 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 13, 19

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................................... 17

*Weinberger v. Thornton*,
    114 F.R.D. 599 (S.D. Cal. 1986) ............................................................ 14

*West Virginia v. Chas. Pfizer & Co.*
    314 F.Supp. 710 (S.D.N.Y. 1970) .......................................................... 21

**Extra Jurisdcitional Cases**

*Berry v. Baca*,
    2005 WL 1030248 (C.D. Cal. May 2, 2005) .......................................... 13

*Holloway v. Full Spectrum Lending, et. al.*,
    2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) ....................... 14

- 5 -

*In re Badger Mountain Irr. Dist. Securities Litigation*,
    143 F.R.D. 693 (W.D. Wash. 1992) ................................................................ 14, 15

*In re M.L. Stern Overtime Litigation*
    2009 U.S. Dist. LEXIS 31650 (S.D. Cal. 2009) .................................................... 19

**Other Authorities**

Fed. R. Civ. P. 23(a) ............................................................................................... 12, 13

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 14

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 14

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 16

Fed. R. Civ. P. 23(b) ................................................................................................ 12, 13

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 14, 16, 25

**Treatises**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11:41 (4th ed.
    2006) ................................................................................................................. 20

Manual for Complex Litigation (4th ed. 2005) §21.632 ................................... 12, 23, 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. **INTRODUCTION**

Plaintiff and her counsel, by this motion, seek an Order of the Court:

(1)     Conditionally certifying the stipulated Settlement Class;[1]

(2)     Granting preliminary approval to the proposed settlement;

(3)     Appointing Kurtzman Carson Consultants, LLC ("KCC") as the settlement administrator;

(4)     Approving the Class Notice Plan; and

(5)     Establishing a schedule for the provision of notice of the settlement and for final approval proceedings with respect to the settlement.

For the reasons explained herein, Plaintiff submits that: (1) the settlement in this action is fair, reasonable and adequate and in the best interests of the Settlement Class and, therefore, merits this Court's preliminary approval; (2) the Settlement Class should be conditionally certified for settlement purposes; and (3) the Notice Plan designed by KCC provides the best practicable notice to the Settlement Classes under the circumstances of this case.  Accordingly, the Court should grant Plaintiff's motion, which is unopposed, and enter the parties' Order Granting Preliminary Settlement Approval that has been submitted for the Court's consideration.

## 2. **SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Between November 16, 2005 and April 29, 2010, Defendants charged passengers between $15-$200 for different types of checked baggage presented by a passenger at the time of their flight.  This fee was not included in the price paid by passengers for their tickets. Plaintiff alleges that by charging this fee Defendants expressly agreed to undertake, imposed on themselves, and assented to the several contractual obligations arising from payment of the baggage fee. Defendants' obligations allegedly included the obligation to timely deliver (and not lose),

---

[1] The Settlement Class is defined in Section 3(A) below.

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

customers' baggage and to refund baggage fees if it failed to do so.

As alleged in the operable complaint, Defendants' contractual undertaking was independently evidenced by both their words and their conduct. Their words are in the form of their Customer Commitment, which states, *inter alia*, that: "US Airways has committed to…. Provide on-time baggage delivery…. Make prompt refunds… [and] Require the same quality of service by US Airways Express partners."

Boiled down to its core this case is simple, Plaintiff Huffman and members of the Settlement Class were charged baggage fees to transport their baggage, but when US Airways did not deliver the baggage to them within a reasonably timely fashion upon their arrival, US Airways did not refund their baggage fees. As a result, on November 16, 2010, Plaintiff filed her class action complaint pleading various breach of contract claims, breach of the covenant of good faith and fair dealing, and tort claims.

On January 31, 2011, Huffman subsequently filed her First Amended Complaint (the "FAC").  On February 18, 2011, Defendant US Airways, Inc. moved to dismiss Huffman's First Amended Complaint. Following briefing and argument, on April 27, 2011, this Court entered an order dismissing Huffman's claims on the ground that they were preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 40120, et seq. (the "ADA"). On May 24, 2011, Huffman filed her Notice of Appeal and the District Court's decision was ultimately evaluated by the Ninth Circuit after briefing and argument by the parties.

On May 3, 2017, in Hickcox-Huffman v. US Airways, Inc., 855 F.3d 1057 (9th Cir. 2017), the Ninth Circuit reversed the order of dismissal.  Accordingly, the case was remanded for further proceedings consistent with the Ninth Circuit's opinion.

Pursuant to a Joint Stipulation, on September 7, 2017, Huffman dismissed her fifth cause of action for Breach of the Implied Covenant of Good Faith and Fair

Dealing, her sixth cause of action for Unjust Enrichment, her seventh cause of action for Intentional Misrepresentation, and her eighth cause of action for Negligent Misrepresentation, without prejudice. [ECF No. 53].

On September 8, 2017, Defendants filed another motion to dismiss several of the contract claims.  The District Court granted Defendants' motion to dismiss as to two of Plaintiff's contract causes of action but overruled the motion to dismiss with respect to the Breach of Implied Contract claim.  Defendants answered on November 8, 2017 and admitted it entered into an express contract with Huffman, under which Defendants agreed to timely deliver Huffman's bags to her upon her arrival at her destination.  Thereafter, Defendants moved for and the Court granted a motion for judgment on the pleadings against Plaintiff's Breach of Implied Contract claim for relief, leaving Plaintiff with a sole claim for relief for Breach of Written Contract.

Plaintiff then proceeded to conduct pretrial discovery, an inspection of the US Airways Terms of Transportation and related policies, and expert analysis of data regarding checked baggage, as well as legal research regarding the sufficiency of the claims and appropriateness of class certification.  Ultimately, the parties agreed to go to mediation which occurred over the course of two days of in-person sessions with private mediator Jill Sperber, Esq., of Judicate West.  The result of those mediation sessions was the Settlement Agreement attached as Exhibit A to the Declaration of Robert A. Curtis filed concurrently herewith (hereinafter "Curtis Approval Decl.").

## 3.  SUMMARY OF SETTLEMENT TERMS

The key terms of the Settlement Agreement are as follows:

### A. The Settlement Class

As a part of the Settlement, subject to the Court's approval, the parties have stipulated to conditional certification of the following Settlement Class:

All passengers of US Airways who traveled on a domestic flight

between November 16, 2005 and April 29, 2010, checked baggage that was lost or delayed, and reported to US Airways during the Class Period that their checked baggage was lost or delayed.

Specifically excluded from the Class are: (a) US Airways, its employees, principals, officers, directors, agents, affiliated entities legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; and (c) all persons who have filed a timely Request for Exclusion from the Class.

### B. <u>Total Settlement Amount</u>

The Settlement establishes a $9.85 million common fund. (Curtis Approval Decl., Exh. 1, para. 34, 42.) Under the Settlement, US Airways will pay the $9.85 million in cash into a Settlement Fund to be administered by the Court-appointed Settlement Administrator. The cost of Notice to the Classes and settlement administration will be taken from the Settlement Fund. (Curtis Approval Decl., Exh. 1, para. 58.) Also from the Settlement Fund, Plaintiff's counsel will make separate applications to the Court for (1) an award of attorneys' fees not to exceed 30% or $2,955,000 (Curtis Approval Decl., Exh. 1, para. 52.); (2) reimbursement of litigation expenses not to exceed $50,000 (*Ibid.*); and, (3) an incentive award for the named Class Representative not to exceed $10,000 (Curtis Approval Decl., Exh. 1, para. 51.) Plaintiff's counsel will make a separate motion for an award of attorneys' fees, expenses and incentive awards to be heard at the time of the final approval hearing. Therefore, the fairness and reasonableness of these attorneys' fees, expenses and incentive awards will be fully briefed for the Court at that time.

### C. <u>Settlement Class Member Benefits</u>

Any monies remaining in the Settlement Fund after payment of costs of administration, Court-approved attorneys' fees and expenses, and the Court-approved incentive award will be distributed pro-rata between all known Class Members and all Class Members who submit timely and valid claim forms. (Curtis

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

Approval Decl., Exh. 1, para. 43.)  Although the data from US Airways legacy computer system is not perfect, through discovery Plaintiff was able to identify approximately 404,000 potential Class Members.  (Curtis Approval Decl., ¶ 15.) Class Members will also be able submit a claim form if they believe they are entitled to receive the benefits outlined in the Settlement Agreement. (Curtis Approval Decl., Exh. 1, para. 7, 62, 63.)  To be valid, the Claim Form shall include at least the following information:  (a) the name of the submitting party; (b) the address of the submitting party; and (c) an attestation under penalty of perjury that the submitting party was a passenger of US Airways who traveled on a domestic flight between November 16, 2005 and April 29, 2010, checked baggage that was lost or delayed, and reported to US Airways during the Class Period that his or her checked baggage was lost or delayed.  (Curtis Approval Decl., Exh. 1, para. 7.)

For the sake of example, if costs of administration total $700,000, Plaintiff's counsel is awarded $3,005,000 in fees and expenses and Plaintiff Huffman is awarded a $10,000 incentive award, the class members would then divide $6,285,000 pro-rata.   Assuming further that 40,000 people submit claim forms that add to the 404,000 known members than each class member would receive $14.15 ($6,285,000 ÷ 444,000 Class members.)  This is an outstanding result given that for most of the class period the baggage fee was $15.00.

### D.   Cy Pres for Uncashed and Undeliverable Checks

Any cash awards that are not redeemed before the Expiration Date or that are returned to the Settlement Administrator as undeliverable after mailing to the Class Member at the address provided by the Class Member or found in US Airways' records, will no longer be valid awards, and the value of such unredeemed awards shall be placed in the Residual Funds and distributed as indicated below:

(I)     To the extent economically feasible taking into account all costs associated therewith, the Settlement Administrator will distribute, in the form of a supplemental payout, the Residual Funds pro rata among the Class members that

cashed the initial payment of the cash awards; or

(ii)    If the payment of the Residual Funds to Authorized Claims is not economically feasible, the Settlement Administrator will distribute the Residual Funds cy près in the form of a cash donation to the American Association of Retired Persons.

## 4.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement at the preliminary approval stage is well-established:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submits the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined.  The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). … The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation (4th ed. 2005) §21.632 at p. 382.

### A.   The Law Favors The Settlement Of Disputed Claims

It is well-established that the law both nationally and in this state favors the settlement of disputed claims.  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  Indeed, the Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless, where "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement."

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).   In conducting the first part of its inquiry, the court "must pay 'undiluted, even heightened, attention' to class certification requirements." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); accord *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005).

## B. The Classes Warrant Certification For The Purposes Of This Settlement

A class action should only be certified for settlement purposes if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Rule 23(a) restricts class actions to cases where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class."  These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).  One of

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

those subsections, Rule 23(b)(3), allows for a class action if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and, (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are more commonly referred to as predominance and superiority.

Plaintiff strongly believes the Settlement Class defined above meets all the required prerequisites for conditional class certification.

### 1. Numerosity

No magic number exists with regard to the requisite number of class members, however, classes of forty or more are considered sufficiently numerous. *Holloway v. Full Spectrum Lending, et. al.*, 2007 U.S. Dist. LEXIS 59934, *7 (C.D. Cal. June 26, 2007); *See also, Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 fn. 10 (9th Cir. 1980), opinion amended 726 F.2d 1366 (9th Cir. 1984) (collecting cases). Precise enumeration of the members of a class is not necessary for the named plaintiff to proceed as the representative of the class. *Weinberger v. Thornton*, 114 F.R.D. 599, 602 (S.D. Cal. 1986). Rather, "[a] reasonable estimate of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1)." *In re Badger Mountain Irr. Dist. Securities Litigation*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

Numerosity exists here. Discovery has revealed that the Class is comprised of over 404,000 potential members. (Curtis Approval Decl., ¶ 15.)

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is "construed permissively" and requires only a common issue of law or fact, or that the defendant has engaged in a common course of conduct in relation to the potential class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The allegations in the operative Complaint relating to Defendants' actions and conduct alone can provide

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

sufficient common questions of law and fact to support class certification.  *In re Badger Mountain Irrigation Dist. Sec. Litigation*, 143 F.R.D. at 698.

All of the claims of the members of the Settlement Class arise from a common core of salient facts.   All: (a) traveled on a domestic flight between November 16, 2005 and April 29, 2010, (b) paid baggage fees for checked baggage that was lost or delayed, (c) reported to US Airways that their checked baggage was lost or delayed; and (d) did not receive a refund of the checked baggage fee.

To the extent there is any variation among class members in their motivation for entering into the transaction, the factual circumstances behind their bag getting lost, or the price that was paid as part of the transaction does not defeat the relatively "minimal" showing required to establish commonality.  *See*, e.g.*, Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (holding that the commonality requirement was satisfied by allegations that the defendant beverage supplier's "packaging and marketing materials [were] unlawful, unfair, deceptive or misleading to a reasonable consumer").

Here, there are more than enough common facts and common issues of law to support conditional-certification in this action.

### 3.  Typicality

Typicality is present where the representative's claims arise from the same event, practice, or course of conduct as the class claims and rely on the same legal theories.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  As discussed above, the claims of the named Class Representative arise from the same conduct experienced by all—namely US Airways' failure to refund baggage fees on lost or delayed luggage.  In seeking to remedy Defendants' alleged wrongdoing, Plaintiff is asserting identical legal claims against Defendants on behalf of herself and the members of the Settlement Class.  As a result, Plaintiff's claims are coextensive with those of absent class members and, thus, typical of the claims of

the class. Accordingly, the typicality element is met.

### 4. Adequacy of Representation

Representation is adequate where Plaintiff's counsel are qualified and competent to represent the class, and the class representatives do not possess interests that are antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, there is no conflict between the claims of class representative and the class, and Plaintiff's counsel have vigorously pursued the classes' claims. Moreover, class counsel has been appointed as lead class counsel in a number of similar consumer cases. (Curtis Approval Decl., ¶¶ 4-5.) Therefore, the requirements of Rule 23(a)(4) have been met.

### 5. Predominance

Under Rule 23(b)(3), a class action may be maintained where the court finds that common questions of law or fact predominate and a class action is a superior method to other forms of adjudication. Fed. R. Civ. P. 23(b)(3). As noted, consumer claims such as those in this case are the paradigmatic case for class certification. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617 (quoting Mace, 109 F.3d at 344).

"The Rule 23(b)(3) predominance inquiry tests whether the Class is sufficiently cohesive to warrant adjudication by representation." *In re Phenylpropanolamine Prods. Liab. Litig.*, 227 F.R.D. 553, 562 (W.D. Wash. 2004) (quoting *Amchem*, 521 U.S. at 623). Rule 23(b)(3) focuses on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d 1011, 1022

(9th Cir. 1998) (quoting 7A Wright & Miller, Federal Practice & Procedure § 1778 (2d ed. 1986)).

All of the legal claims in this case turn on whether US Airways' failure to refund baggage fees for lost or delayed bags constitutes a breach of written contract. The factual allegations here are common, namely, what did US Airways' Customer Commitment (which they have admitted is a binding contract) say about refunding baggage fees for lost and delayed bags. Here, as addressed above, there is a "common nucleus" of operative facts that underlies all of the claims asserted in this action. *See Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722, 726 (N.D. Cal. 1967) (common questions exist and predominate when there is present a "common nucleus of operative facts"). These questions predominate over any conceivable individual issues because <u>Defendants' practices are uniform</u>, and therefore necessarily common, as to each of the members.

These common factual and legal issues show that the overriding issues in the case are identical for all class members.

### 6. Superiority

A class action is superior to other methods of litigation "[w]here class wide litigation of common issues will reduce litigation costs and promote greater efficiency . . ." and "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996).

It cannot be disputed that class wide resolution of the issues in this case will reduce litigation costs and promote efficiency for the Court as well as the litigants. As even Plaintiff's limited discovery to date has shown, the evidence which relates to contractual language of the Defendants does not vary from one class member to another. Any trier of fact will draw the same conclusions from the same contractual documents in the same manner from one class member to the next. Absent a class action, the trier of fact – be it judge or jury – will hear the same facts regarding Defendants' practices, over and over again.

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

Moreover, in this case, the typical claim is far too small for any individual class member to be expected to pursue a separate action. Each individual's claim, standing alone, is a "negative value" claim – that is, a claim whose value would be dwarfed by the cost of litigating the claim. A class action is the only feasible means by which individual class members with negative value claims can hope to obtain a cost-effective remedy. As was pointed out by Judge Weinfeld in *duPont Glore Forgan, Inc. v. American Telephone and Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y. 1975), a case in which one of the class representatives had a claim of $130,000 (an amount far in excess of the anticipated individual claims in this action):

> [T]he time-cost factor of legal fees in view of the vigor of defendants' opposition make it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery – in fact, Monsanto would, if required to proceed on an individual basis, forego its claim ... Thus, the assertion that this action will not go forward at all if class action status is denied is plausible. The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation.

*Id*. at 487. (Emphasis is added.)  Here, the average damage per Settlement Class member was arguably the costs of the checked bag fee (usually between $15-$20.)

In the absence of class certification in this action, it is virtually certain that none of the other class members' individual claims will go forward. "Where it is not economically feasible to obtain relief [in separate suits] …, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980). "[T]here is a strong presumption in favor of a finding of superiority" where, as here, "the alternative to a class action is likely to be no action at all for the majority of class members." *Cavin v. Home Loan Ctr. Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006). This presumption is rooted in the policy that lies "'at the very core of the class action mechanism'"—namely, "'overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or

her rights.'" *Amchem*, 521 U.S. at 617, *quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 228, 344 (7th Cir. 1997).

In sum, the class action device is superior because there simply are no practical or economic alternative procedures available to the parties which might be used to adjudicate the claims for relief asserted in this action in a more fair and/or more efficient manner.   Accordingly, a class action is the superior method for adjudicating these claims.

### 7.  Conclusion

As demonstrated above, the stipulated Settlement Class meets all the prerequisites of Rule 23(a) and Rule 23(b)(3) and, thus, this Court should ratify the propriety of the stipulated certification for the purposes of settlement.  See *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

## 5.  <u>PRELIMINARY APPROVAL SHOULD BE GRANTED TO THE SETTLEMENT</u>

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  *In re M.L. Stern Overtime Litigation*, 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. 2009); see also *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).  In determining whether a settlement is fair, reasonable, and adequate, courts balance several factors, including:

> The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992), citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

As many district courts have identified, analyzing a class action settlement

begins with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation. See 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11:41 (4th ed. 2006).

Each of these factors is present here: Class Counsel have extensive experience in class action litigation (see Curtis Approval Decl., ¶¶ 4-6), the settlement was reached only after ample investigation (*see* Section 6(C) below) and an extensive arm's-length mediation facilitated by an experienced mediator, Jill Sperber, Esq. of Judicate West, and substantial negotiation about the specific terms of the settlement.  See *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair"(citation omitted)).

In addition, as set forth below, the factors identified in *City of Seattle* weigh heavily in favor of preliminary approval of the settlement.

**A. <u>The Strength of Plaintiff's Case, the Complexity, Expense and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Throughout the Trial</u>**

While counsel for the Plaintiff is confident in their position, in the absence of a settlement, there would be several risks associated with this case going forward.

First, Defendants have contested liability and class certification vigorously in this case, and it is believed that Defendants would continue to vigorously oppose the merits of the case.  While Plaintiff's counsel are confident in their ability to certify and  maintain the class action status through trial, there are always risks inherent in litigation, and the Plaintiff's counsel acknowledge that there are always challenges in proving liability and damages, as well as the possibility that Defendants will raise meritorious defenses to the certified claims.  This is especially true in class action litigation.  As one court observed:

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered at settlement.

*West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir. 1971), cert. denied, 404 U.S. 871 (1971) but disapproved on other grounds by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

In addition, even assuming class certification was obtained, expenses would have been significant because notice to the class members is a costly endeavor, merits discovery would take place in multiple locations throughout the country in view of Defendants' extensive operations, and the analysis of Defendants' legacy computer records likely would have required expert analysis and extensive document production.

Thus, this factor weighs in favor of preliminary approval of the settlement. The Settlement will allow Settlement Class members to avoid additional delays and avoid the risk that Defendants may ultimately prevail.

### B. <u>The Amount Offered in Settlement</u>

The settlement class members who submit a claim form will receive the benefits outlined in the settlement agreement including $14.00 or more per class member net of the fees and costs associated with the settlement.  The total amount of settlement benefit available to the class is $9,850,000.

 "In order to assess the reasonableness of a settlement in cases seeking primarily monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3rd Cir. 2004).  Based on discovery, it is

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

estimated that class members usually paid between $15-$20 per checked bag. (Curtis Approval Decl., ¶ 15.) When viewed in light of the potential risks discussed above the settlement, a pro-rata recovery between $14-$15 (net of fees and costs) is more than fair; it is excellent and weighs in favor of preliminary approval of the settlement.

## C. <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As the Ninth Circuit reiterated, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

As this Court is aware, this case has been extensively litigated for almost eight (8) years. The case involved numerous contested motions before the court. (*See* Section 3, above.) In addition, during the course of the litigation, the parties conducted extensive discovery -- counsel for Plaintiff alone reviewed over 1850 documents, propounded interrogatories, reviewed with their experts massive amounts of electronic data including over 1,100,000 electronic records of lost bags. (Curtis Approval Decl., ¶ 8.) In addition, both parties' experts prepared and exchanged several damage models during the mediation. (Curtis Approval Decl., ¶ 11.) Thus, it is clear that the parties have sufficient information to make an informed decision about settlement, and this factor weighs in favor of preliminary approval of the settlement.

## D. <u>The Experience and Views of Counsel</u>

The judgment and views of experienced counsel entering into a settlement are entitled to great weight. Plaintiff's counsel is well known for their experience

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

and success in litigating class actions and fully support this settlement.  (Curtis Approval Decl., ¶¶ 4-6, 16.)    The fact that such qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the settlement. Courts recognize that the view of the attorneys conducting the litigation "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985).

Plaintiff's counsel believes that the Settlement achieved on behalf of the Settlement Classes in this action is fair, reasonable and in the best interests of the Settlement Class Members.  (Curtis Approval Decl., ¶ 16.) Class Counsel believe that the Settlement is an excellent result for the Settlement Class Members and worthy of this Court's preliminary and, ultimately, final approval.  (*Ibid.*)

### E. <u>There Are No Red Flags Raised By The Settlement</u>

In making its preliminary determination as to the fairness, reasonableness and adequacy of a proposed class action settlement, no one factor above should be determinative for the Court.  There are, however, certain "red flags" of which the Court should be aware:

> The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys.

*Manual for Complex Litigation* (4th ed. 2005) §21.632 at p. 383.

There are no issues related to the Settlement that should be of concern to the Court at the preliminary approval stage.  Under the Settlement, all class members who claim will participate equally in the balance of the $9,850,000 Settlement Fund that remains after the costs of notice and settlement administration, court-approved attorneys' fees and expenses, and payments to the Class Representative are deducted. Therefore, there is no potential for differential treatment of the members of the Settlement Class.  Nor is there any need for subclasses because all members

- 23 -

of the Settlement Class are similarly situated and will be entitled to receive an equal pro rata share of the settlement benefits.

While Class Counsel will seek, by separate motion to be filed and heard at the Final Approval hearing, reasonable incentive awards for the Class Representative (i.e., Plaintiff) to compensate her for the time that she has devoted to pursuing this litigation for the benefit of all of the other Settlement Class Members, requests for reasonable incentive payments are typically granted by the courts where, as here, the Class Representative's involvement in the case has been significant, the duration of the case has been long, and the settlement benefits are substantial.

Additionally, Class Counsel will be seeking, by separate motion to be filed and heard at the Final Approval hearing, attorneys' fees in an amount not to exceed 30% of the $9,850,000 million common fund – an amount which is within the range of fee awards typically granted by the district courts in the Ninth Circuit. Moreover, the amount of attorneys' fees was neither discussed, negotiated nor agreed upon by the parties as part of the Settlement, and therefore had no impact on the negotiation of the terms of the Settlement. (Curtis Approval Decl., ¶ 12.) Rather, the amount of the attorneys' fees to be awarded to Class Counsel will solely be determined by the Court.

In summary, the Settlement in this action satisfies the factors that district courts in the Ninth Circuit typically consider at the preliminary approval stage and raises none of the "red flags" that a district court may consider to be troubling.

## 6. <u>SUMMARY OF NOTICE PLAN</u>

The Notice Plan is described in detail in the Declaration of Carla Peak in Support of Settlement Notice Plan ("Peak Decl.") and summarized in the Settlement Agreement at paragraphs 44-50. The Notice Plan that is being proposed in connection with the Settlement was designed by KCC, a class action settlement administrator with extensive experience in the field. (Peak Decl., ¶¶ 3-6.)

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

The Notice Plan utilizes postcard notices to all identifiable Class members for the records provided by US Airways. (Peak Decl., ¶¶ 15-18.)  In addition, the Notice Plan utilizes publication notice in a host of print periodicals (National Geographic, People Magazine and the New York Times) and by an extensive Internet banner ad campaign to reach unknown Settlement Class Members.  (Peak Decl., ¶¶ 18-32.)  KCC estimates that the Notice Plan will reach in between 70% and 95% of likely Settlement Class Members. (Peak Decl., ¶ 36.)

The "reach" of the Notice Program is consistent with other court-approved settlement notice programs and is designed to meet due process requirements. For example, the Federal Judicial Center's (FJC) Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the FJC Checklist) considers 70-95% reach among class members to be a high percentage. (Peak Decl., ¶ 36.) The Notice Plan in this case falls squarely within these parameters. (*Ibid.*)

Plaintiff's Counsel, counsel for US Airways and KCC worked collaboratively to develop the various forms of notice for Court approval. All forms of notice are designed to be noticeable, clear and concise, and written in plain, easily-understood language.  Proposed forms of Notice (publication notice and long-form/website-accessible notice) are attached to the Settlement Agreement as Exhibits E and F.  Further details regarding the Notice, as well as the timing and method of their dissemination, are set forth in the Peak Declaration and in the Settlement Agreement (Curtis Approval Decl., Exh. 1, para. 44-50.)

In summary, the Notices have been designed to be "noticed" and understood by Settlement Class Members. They contain easy-to-read summaries of all of the key information affecting Settlement Class Members' rights and options. All information required by Federal Rule of Civil Procedure 23, as well as the Manual for Complex Litigation, has been incorporated into the notice documents. (Peak Decl., ¶ 35.)

In addition to the three forms of Notices, an informational website will be

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

established to allow Settlement Class Members to obtain additional information and documents about the Settlement. (Peak Decl., ¶ 33.)  The long-form notice, the Settlement Agreement, and all papers filed with the Court in connection with the motions for preliminary settlement approval and final settlement approval will be posted on the website for Settlement Class Members to access and review. Lastly, a toll-free number will be established to allow a simple way for Settlement Class Members to: (a) learn more about the Settlement in the form of frequently asked questions and answers; and (b) request that more information be mailed directly to them. The toll-free number will be prominently displayed in all printed notice materials. (Peak Decl., ¶ 34.)

In the opinion of KCC, the Notice Plan provides the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  It provides the same range of reach and frequency that courts have approved and that has withstood appellate scrutiny as well as critiques by other experts.  The Notice Plan also is consistent with the 70-95% reach guideline in the FJC's Checklist. (Peak Decl., ¶ 36.)

Plaintiff requests that the Court approve the Notice Plan recommended by KCC and appoint KCC as the Settlement Administrator in this action.

## 7. <u>SCHEDULE FOR FINAL APPROVAL HEARING</u>

The deadlines that need to be set in advance of the hearing on the motion for final approval of the Settlement (including the deadlines for submitting objections to the Settlement, for submitting requests for exclusion, and for filing the final approval and related motions), as well as the date for the final approval hearing itself, are dependent upon the date on which the Court grants preliminary approval of the Settlement.

The parties have submitted to the Court a proposed Order Granting Preliminary Approval of Proposed Settlement ("Preliminary Approval Order".) The

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD

dates proposed below assume the Court will enter the Preliminary Approval Order on or before October 10, 2018.

| Preliminary Approval  Hearing | October 9, 2018 |
|---|---|
| US Airways to Provide Addresses to Settlement Administrator | October 15, 2018 |
| Last day to Commence Notice Program | November 10, 2018 |
| Plaintiff to File Motion for Attorney's Fees | January 25, 2019 |
| Deadline for Request for Exclusion (Opt-Outs) | February 8, 2019 |
| Deadline for Objections to Settlement | February 8, 2019 |
| Plaintiff to File Motion for Final Approval | February 12, 2019 |
| Settlement Administrator to File Report re Requests for Exclusion | March 12, 2019 |
| Deadline for any Objector to File a Notice to Appear | March 12, 2019 |
| Optional Reply Addressing Objections, if any | March 12, 2019 |
| Final Approval Hearing | March 19, 2019 |

Plaintiff respectfully submits that this schedule provides adequate notice and opportunity to be heard.  If the Court enters the Preliminary Approval Order after October 10, 2018, the parties request that the Court modify the Order to specify dates that correspond to the time increments between the dates set forth above.

## 8. CONCLUSION

For the foregoing reasons, this Court should enter the parties' Order Granting Preliminary Settlement Approval that has been submitted for the Court's consideration.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  September 4, 2018

FOLEY BEZEK BEHLE & CURTIS LLP
LAW OFFICE OF WILLIAM M. ARON
KARCZAG AND ASSOCIATES PC


By:        /s/Robert A. Curtis
               Robert A. Curtis
Attorneys for Plaintiff
HAYLEY HICKCOX-HUFFMAN, on
behalf of herself and proposed Settlement
Class

MOTION FOR PRELIMINARY APPROVAL
CASE NO. 5:10-CV-05193-VKD